# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===

NO. 03-11-00223-CV

===

**Appellants, Brett Bray, in his Official Capacity as Director of the Motor Vehicle Division of the Texas Department of Transportation; and Gulf States Toyota, Inc.// Cross-Appellant, Tejas Toyota, Inc.**

**v.**

**Appellee, Tejas Toyota, Inc.// Cross-Appellees, Brett Bray, in his Official Capacity as Director of the Motor Vehicle Division of the Texas Department of Transportation; and Gulf States Toyota, Inc.**

===

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-09-002086, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING**

===

**O P I N I O N**

Brett Bray, Director of the Motor Vehicle Division of the Texas Department of Transportation ("the Division"), and Gulf States Toyota, Inc. ("Gulf States") appeal a trial court judgment reversing the Division's final order in a motor vehicle franchise dispute and remanding to the agency for further proceedings.[1] The Division concluded that Gulf States did not violate statutory notice and good faith and fair dealing requirements when it offered a replacement franchise

---

[1] Although the Division issued the administrative order on appeal in this cause, the legislature transferred the Division's functions to the newly created Texas Department of Motor Vehicles ("the Department"), effective November 1, 2009. *See* Act of May 18, 2009, 81st Leg., R.S., ch. 933, § 6.01(a), 2009 Tex. Gen. Laws 2485, 2519; *see also* Tex. Occ. Code Ann. § 2301.005 (West Supp. 2011). The trial court therefore remanded the case to the Department. For convenience, and to avoid confusion, references to "the Division" or "the agency" shall also include the Department and vice versa.

agreement to Tejas Toyota, Inc. ("Tejas"). *See* Tex. Occ. Code Ann. §§ 2301.454 (West. Supp. 2011) (notice and good cause required to replace franchise agreement if replacement would have substantial adverse effect), .478 (parties to franchise owe reciprocal duty of good faith and fair dealing) (West 2004).[2] The trial court reversed, concluding that notice was required, and remanded the case to the agency for consideration of Tejas's claim that Gulf States lacked good cause to replace the prior franchise agreement. The trial court's judgment does not reflect a ruling on Tejas's good faith and fair dealing complaint; however, Tejas cross-appeals the judgment as to that claim, alleging that the Division applied an erroneous legal standard in considering the claim. We will reverse the trial court's judgment and render judgment affirming the Division's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Gulf States is a licensed Toyota distributor. Tejas, which is located in Humble, Texas, has been a Toyota dealer and Gulf States franchisee since 1975. Gulf States' business model is based on two-year franchise agreements with its dealers; when the old franchise agreement expires, Gulf States offers a new one. The dispute in this case arose when Gulf States offered Tejas a replacement franchise agreement, which renewed the agreement for an additional two years on substantively identical terms.

Instead of executing the replacement franchise agreement, Tejas filed an administrative complaint pursuant to section 2301.454 of the Texas Occupations Code concerning

---

[2] In this opinion, we cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

2

seven provisions in the replacement agreement.[3]  Section 2301.454 prohibits a distributor from modifying or replacing an existing franchise "if the modification or replacement would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide service to the public, unless" two conditions are met:  (1) appropriate notice is given, and (2) any protest is resolved in favor of the modification or replacement. *Id.* § 2301.454.  Although it is undisputed that the contested provisions are either identical or substantively identical to the provisions in the previous franchise agreement,[4] Tejas asserted that, due to changed circumstances, the challenged provisions will adversely affect to a substantial degree its sales, investment, or obligations to provide service to the public, and as a result, Gulf States could not replace the prior franchise agreement with the new franchise agreement without (1) providing notice to Tejas regarding its right to protest the replacement contract, and (2) establishing good cause for the replacement.  *See id.*

Four of the provisions at issue explicitly or implicitly employ a sales-performance standard requiring Tejas to achieve 100% sales efficiency, which Tejas contends is unreasonable as a matter of law.[5]  Under the terms of both the previous and replacement franchise agreements, failure

---

[3] Tejas originally challenged eight provisions in the replacement agreement, but abandoned its challenge to one provision with which it was already complying.

[4] Tejas concedes that five of the provisions are verbatim replicas of provisions in the prior agreement, one provision has minor changes, and another provision is substantively indistinguishable from the predecessor provision.

[5] Sales efficiency is a function of expected sales of Toyota vehicles in the dealer's Primary Market Area ("PMA") compared to a dealer's actual sales.  In determining sales efficiency, the dealer's actual sales, regardless of whether the vehicles are ultimately registered to owners in the dealer's PMA or sold for use elsewhere, make up the numerator of the sales efficiency ratio.  The denominator is determined by multiplying all new vehicle registrations in the PMA (regardless of vehicle brand) by Toyota's five-state regional market share.  Thus, if Toyota has a 20% regional market share and 1,000 cars of any brand are sold into Tejas's PMA, Tejas's expected sales would

to achieve 100% sales efficiency could result in Gulf States revoking conditional approval of Tejas's general manager, James Elrod, and terminating the franchise (subject to certain contractual and statutory requirements). The other three provisions at issue give Gulf States the right to (1) terminate the franchise if Tejas appoints a new general manager without Gulf States' prior written approval, (2) terminate the franchise if Tejas breaches any term or provision of the agreement, and (3) purchase the dealership under certain circumstances. The central dispute in this case concerns the effect of Tejas's present inability to achieve 100% sales efficiency.

Although Tejas apparently has never achieved 100% sales efficiency under either its current or former general managers and Tejas had not previously disputed the propriety of the challenged provisions, the change in circumstances that Tejas cites is that Gulf States had communicated its intent to enforce its contractual right to revoke conditional approval of Elrod as Tejas's general manager even though Tejas has been considerably more profitable under Elrod's leadership than it has ever been. Under both the prior and replacement franchise agreements, Gulf States conditionally approved Elrod as Tejas's general manager with final approval contingent on Elrod's successful completion of Gulf States' General Manager Evaluation Program ("GME Program"). Although not expressly stated in either franchise agreement, it is undisputed that successful completion of the GME Program requires that Tejas achieve 100% sales efficiency by the end of the program evaluation period. At the time the replacement contract was offered, Elrod had

---

be 200 cars, and for Tejas to satisfy its sales performance objectives, it would have to sell at least 200 cars (200 actual sales / 200 expected sales = 100% sales efficiency). In a PMA with more vehicle registrations, a dealer servicing that area would have to sell more cars to achieve sales efficiency, and in a PMA with fewer registrations, the sales objective could be met with fewer sales. The regional market share, however, is determined without regard to differences in local markets.

unsuccessfully participated in the GME Program on four previous occasions and was engaged in his fifth, and apparently final, attempt to pass the program. The sole impediment to his qualifying under the program was the inability of Tejas to achieve 100% sales efficiency.

When it became apparent that Elrod would not successfully complete the GME Program and that he would not be offered any additional opportunities to do so,[6] Tejas objected to executing the new franchise agreement. Although the prior franchise agreement remains in effect, Tejas seeks to invalidate the contested provisions in both agreements by challenging the replacement agreement under section 2301.454 of the occupations code, which requires a distributor to establish good cause to replace an existing franchise agreement. *See id.* Tejas also complained that Gulf States violated the statutory duty of good faith and fair dealing by proposing contract terms based on a sales performance standard that it contends is unreasonable as a matter of law.[7] *See id.* § 2301.478.

It is undisputed that Gulf States did not provide the notice specified in section 2301.454, but Gulf States and the Division contend that notice is not required unless the

---

[6] Although not argued in this case, it is uncertain whether it would be permissible for Gulf States to revoke conditional approval of Elrod under the terms of the replacement agreement, which if executed renews conditional approval of Elrod, gives him until the end of the new two-year contract term to successfully complete the GME Program, and gives Tejas until the end of the agreement to achieve 100% sales efficiency. Gulf States' indication that Elrod will be given no further opportunities to complete the program could be inconsistent with the express terms of the new agreement.

[7] The occupations code has additional provisions expressly directed to unreasonable or discriminatory use of sales standards, but those provisions are not at issue in this case. *See* Tex. Occ. Code Ann. §§ 2301.467 (prohibiting distributors from requiring adherence to unreasonable sales or service standards), .468 (prohibiting distributors from treating dealers differently based on formula, computation, or process intended to gauge dealership performance) (West Supp. 2011).

"replacement [franchise] would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide service to the public" and the notice threshold was not triggered in this case because there was no change between the prior franchise agreement and the replacement franchise agreement. According to Gulf States, there cannot be a substantial adverse effect on the dealer if the provisions of the new franchise agreement are identical or functionally identical to the prior franchise agreement because the prior agreement remains in effect until terminated in accordance with statutory requirements, voluntarily terminated by the dealer, modified or replaced by agreement of the parties, or modified or replaced following an unsuccessful protest under section 2301.454, none of which occurred in this case.

The administrative law judge (ALJ) concluded that Gulf States was required to provide statutory notice and failed to establish good cause for the contested provisions in the replacement contract. *See id.* § 2301.454. According to the ALJ, "a wholesale replacement of the agreement implicates every aspect of the relationship, including the dealer's sales, investment and obligations to the public" and thus triggers the notice requirement and subjects all the provisions to a good cause challenge regardless of whether the provisions of the new franchise agreement are identical or functionally identical to the previous franchise agreement. The ALJ rejected Tejas's claim that Gulf States violated the statutory duty of good faith and fair dealing on the ground that there was insufficient evidence that Gulf States engaged in "conscious doing of a wrong for a dishonest, discriminatory or malicious purpose."

The Division adopted the ALJ's recommendation regarding disposition of the good faith and fair dealing claim, but concluded that Gulf States did not violate section 2301.454's notice

6

requirement because there was no substantive variance in the terms governing the franchise relationship and thus no substantial adverse effect as a matter of law. The Division, therefore, did not consider whether there was good cause for replacing the prior franchise agreement with the proposed agreement.

After exhausting its administrative remedies, Tejas filed a suit for judicial review contesting the Division's resolution of both the notice claim and the good faith and fair dealing claim. After a hearing, the trial court issued a letter in which it addressed only the portion of the Division's order concerning the requirement of statutory notice. The court determined that the Division incorrectly interpreted and applied the notice requirement in section 2301.454 and held that the statutorily prescribed notice is required whenever a franchise agreement is replaced, regardless of whether there is a change in terms. The court also held that an administrative hearing must be held to determine whether a replacement franchise agreement adversely affects the dealer to a substantial degree, whether good cause exists for the proposed replacement franchise, and whether any provision of the replacement franchise is unlawful. The court directed Tejas to prepare an order reflecting the court's ruling and remanding the case to the agency for further proceedings. The court did not discuss Tejas's good faith and fair dealing claim in the letter. In response, Tejas proposed a final judgment that summarized the court's proposed ruling on the notice issue, but did not refer to the good faith and fair dealing claim. The trial court signed the proposed judgment, with modifications, but did not add an express disposition of the good faith and fair dealing claim. The absence of an express ruling on the good-faith claim was not brought to the trial court's attention in any manner ascertainable from the record.

7

On appeal to this Court, the Division and Gulf States reassert that there must be an actual change between the existing franchise agreement and the replacement franchise agreement in order for the provisions of section 2301.454 to apply and that the trial court erred in concluding otherwise. In a cross-appeal, Tejas complains that the trial court "neglected" to rule on its point of error complaining that the Division evaluated its good faith and fair dealing claim under an erroneous legal standard. Tejas therefore brings that point of error forward for disposition by this Court.

## DISCUSSION

### *Standard of Review*

The issues in this case principally concern matters of statutory construction, which is a question of law that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek "first and foremost" in the statutory text. *Id*. Absent legislative definition, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application of the plain language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage," Tex. Gov't Code Ann. § 311.011 (West 2005), and we look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011). Although we must give "serious consideration" to the construction of a statute by the administrative

8

agency charged with its enforcement, we do not defer to an agency interpretation unless the statute is ambiguous. *See id.* at 624.

### *Statutory Notice Requirement*

For the reasons that follow, we conclude that section 2301.454 of the Texas Occupations Code does not require that notice of a right to protest be given to a franchisee, nor good cause established, unless a modification to a franchise agreement or a replacement agreement would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide service to the public. We conclude that if there is no substantive difference between the replacement contract and the replaced contract, there is no substantial adverse effect as a matter of law.

Section 2301.454 provides:

(a) Notwithstanding the terms of any franchise, a manufacturer, distributor, or representative may not modify or replace a franchise *if* the modification or replacement would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide service to the public, *unless*:

(1) the manufacturer, distributor, or representative provides written notice by registered or certified mail to each affected dealer and the department of the modification or replacement; and

(2) if a protest is filed under this section, the board approves the modification or replacement.

(b) The notice required by Subsection (a)(1) must:

(1) be given not later than the 60th day before the date of the modification or replacement; and

(2) contain on its first page a conspicuous statement that reads: "NOTICE TO DEALER: YOU MAY BE ENTITLED TO FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE BOARD IN AUSTIN,

TEXAS, AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE PROPOSED MODIFICATION OR REPLACEMENT OF YOUR FRANCHISE UNDER THE TERMS OF CHAPTER 2301, OCCUPATIONS CODE, IF YOU OPPOSE THIS ACTION."

. . . .

(d) After a protest is filed, the board shall determine whether the manufacturer, distributor, or representative has established by a preponderance of the evidence that there is good cause for the proposed modification or replacement. The prior franchise continues in effect until the board resolves the protest.

Tex. Occ. Code Ann. § 2301.454 (emphasis added). It is undisputed that this case involves a replacement franchise agreement and not a modification to a franchise agreement. It is further undisputed that there is no substantive difference between the prior franchise agreement and the replacement agreement and that Gulf States did not give the notice specified in section 2301.454(b). The ALJ concluded that, unlike a modification, a replacement franchise agreement necessarily affects every aspect of a dealership and subjects the entire replacement agreement to protest under section 2301.454. The trial court concluded that notice is required every time a franchise is replaced regardless of whether there is a change and, upon protest, requires a hearing to determine whether there is a substantial adverse effect and whether the distributor has good cause to modify or replace the franchise agreement. This construction of the statute, however, gives no effect to the statute's grammatical structure and renders meaningless the condition stated in the dependent "if" clause.

Following the grammatical structure of the statute, the "if" clause introduces a condition to or limitation on a distributor's ability to replace or modify an existing franchise and the "unless" clause provides an exception to the condition. The exception provided in the "unless"

10

clause—notice required and successful outcome to any protest—is not triggered unless the condition

stated in the "if" clause applies. Under the trial court's and ALJ's interpretation, however, the

exception provided in the "unless" clause becomes the rule in all cases, thus rendering the "if" clause

meaningless. A cardinal rule of statutory construction is that the legislature is never presumed to do

a useless or meaningless act. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981).

The proper grammatical reading of the statute, and the one that gives full effect to the language used

in the statute, is that a distributor may modify or replace a franchise agreement without notice and

without a good cause determination as long as there is no substantial adverse effect on the dealer

arising from the modification or replacement. In the present case, the replacement franchise

agreement is substantively indistinguishable from the franchise agreement currently governing the

parties' relationship,[8] and thus, there is no *change* that could substantially adversely affect Tejas.

Gulf States can take the same actions permissible under the replacement agreement that it could take

under the prior franchise agreement, and those actions are subject to the same statutory limitations.

Tejas is in no different position by virtue of the replacement agreement; therefore, as a matter of law,

the act of replacing the franchise does not itself create any adverse effect on the dealer.

Tejas contends, and the trial court agreed, that notice is made mandatory by the

"must" language in subsection (b) of the statute. We disagree. Subsection (b) is mandatory and

directory, but it is expressly implicated only if notice is required under subsection (a)(1). As

---

[8] *See* Tex. Occ. Code Ann. §§ 2301.453 (West 2004) (providing that, notwithstanding any contract provisions to contrary, franchise agreement cannot be terminated absent notice and good cause); .454 (West 2011) (providing that prior franchise continues in effect until protest to modification or replacement contract is resolved).

11

previously explained, however, subsection (a)(1) is only triggered if the condition stated in the preceding "if" clause is satisfied, and in this case it is not.

The trial court and the ALJ seemed concerned that mischief could occur if distributors were given discretion to subjectively determine whether a modification or replacement would have a substantial adverse effect before giving statutory notice and triggering a good cause inquiry. But the plain language of the statute necessarily contemplates such discretion, and the discretionary nature of the triggering determination is even more evident when the language in section 2301.454 is compared to the language in section 2301.453, which governs termination or discontinuation of a franchise. In order to terminate or discontinue a franchise, section 2301.453 expressly mandates that prior notice be given to the dealer and that good cause be established if the distributor's action is challenged. *Id.* § 2301.453 (West 2004). Subsection (a) provides, "Notwithstanding the terms of any franchise, a manufacturer, distributor, or representative may not terminate or discontinue a franchise . . . unless the manufacturer, distributor, or representative *provides notice* of termination or discontinuance *as required* by Subsection (c) . . . ." *Id.* § 2301.453(a) (emphasis added). Subsection (c) in turn states that "the manufacturer, distributor, or representative *must provide written notice* by registered or certified mail to the dealer and the board stating the specific grounds for the termination or discontinuance." *Id.* § 2301.453(c) (emphasis added). Thus, unlike section 2301.454, there is no condition in section 2301.453 making notice discretionary and no provision limiting the dealer's right to protest and have a good cause inquiry. The textual distinctions between these adjacent statutory provisions is significant and clearly indicates that the legislature intended for one provision to be discretionary and the other to be mandatory. To the extent the ALJ's and trial

12

court's concerns may be theoretically justified, courts are not at liberty to rewrite statutes to reach a more desirable result in the name of statutory construction. *See, e.g., Stockton v. Offenbach*, 336 S.W.3d 610, 619 (Tex. 2011).

Moreover, the term "franchise" is broadly defined, and, given that breadth, it is unlikely that the legislature intended to invite challenges to a franchise, in whole or part, every time a word or punctuation is changed in the governing documents.[9] Although Tejas repeatedly stresses the distinction between a modification and a replacement—one being partial and the other being total—the statute does not distinguish between the two in its application. And under the trial court's and ALJ's construction of the statute, every minor change constituting a modification would require notice and a possible hearing. We do not believe this is what the legislature intended. Indeed, such a construction could invite just as much mischief on the other side of the relationship as well as waste the administrative agency's time and resources on changes that are substantively insignificant.

---

[9] "'Franchise' means one or more contracts between a franchised dealer as franchisee and a manufacturer or a distributor as franchisor, including a written communication from a franchisor to a franchisee in which a duty is imposed on the franchisee, under which:
(A) the franchisee is granted the right to sell and service new motor vehicles manufactured or distributed by the franchisor or only to service motor vehicles under the contract and a manufacturer's warranty;
(B) the franchisee is a component of the franchisor's distribution system as an independent business;
(C) the franchisee is substantially associated with the franchisor's trademark, tradename, and commercial symbol;
(D) the franchisee's business substantially relies on the franchisor for a continued supply of motor vehicles, parts, and accessories; or
(E) any right, duty, or obligation granted or imposed by this chapter is affected." Tex. Occ. Code Ann. § 2301.002(15) (West Supp. 2011).

Tejas also complains, and the trial court agreed, that the Division's construction of section 2301.454 was inconsistent with its decision in Texas Department of Transportation (Motor Vehicle Division), *Star Houston, Inc. d/b/a Star Motor Cars, Inc. v. Mercedes-Benz USA, LLC*, Docket No. 02-0028-LIC (July 10, 2008). We conclude, however, that the *Star* case is distinguishable on its facts because it involved significant substantive changes to the existing franchise agreement, unlike the replacement franchise agreement in the present case. In addition, to the extent language in that decision might be read more broadly than necessary to the agency's determination in that case, we do not defer to an agency's interpretation unless the statute at issue is ambiguous, and in this case it is not.

Because there is no substantive difference between the existing franchise agreement and the replacement agreement, we hold that as a matter of law the replacement agreement does not substantially adversely affect Tejas and that Gulf States therefore did not violate section 2301.454. In reaching this conclusion, we also note that franchisees are not without remedies if a distributor proposes a change and fails to give statutory notice after erroneously determining that there would be no substantial adverse effect on the dealer. In such a case, the statute of limitations for challenging a modification or replacement would be extended from sixty days to four years. *See* Tex. Occ. Code Ann. §§ 2301.454(c), .7025(b) (West 2004). Furthermore, if a distributor attempted to enforce terms of a franchise that violated statutory provisions, the dealer could file an administrative complaint challenging that distributor's actions. Among the provisions that may be relevant in this case, but which have not been asserted, are prohibitions against requiring adherence to unreasonable sales or service standards, *id.* § 2301.467 (West Supp. 2011), and discrimination

14

based on the use of a formula used to gauge dealership performance. *Id.* § 2301.468 (West Supp. 2011). Both of these provisions expressly apply regardless of what the franchise agreement may otherwise allow.

### *Breach of the Duty of Good Faith and Fair Dealing*

By cross-appeal, Tejas complains in a single issue that the Division applied an erroneous standard in evaluating its claim that Gulf States breached the statutory duty of good faith and fair dealing. Section 2301.478 of the occupations code states that "[e]ach party to a franchise owes to the other party a duty of good faith and fair dealing that is actionable in tort." *Id.* § 2301.478. Tejas claims that Gulf States violated section 2301.478 as a matter of law by proposing franchise terms that rely on sales-performance standards it contends are unreasonable or unfair as a matter of law. In denying Tejas's claim under section 2301.478, the Division adopted the ALJ's determination that "bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for a dishonest, discriminatory or malicious purpose[, and] [t]he record is devoid of evidence that would justify the conclusion that [Gulf States] acted in such a manner." (Citation omitted.) Tejas contends that, in doing so, the Division ignored relevant Texas Supreme Court precedent establishing the common-law definition of good faith and fair dealing and improperly limited the scope of inquiry to "bad faith" without considering any aspect of "fair dealing."

The trial court did not expressly rule on Tejas's good faith and fair dealing claim. Instead, the trial court signed a final judgment that stated it disposed of all claims and all parties, but only expressly ruled on the notice issue. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205-06 (Tex. 2001) (discussing finality of judgments). The judgment was prepared and presented to the

15

court by Tejas following a hearing and the trial court's issuance of a letter announcing its proposed ruling. The letter was limited to the notice issue and directed Tejas to prepare an "order" reflecting the court's ruling, not a "final judgment."

Gulf States contends that Tejas waived the right to complain about error in the judgment by preparing and presenting to the trial court a final judgment that "impliedly" denied the good faith and fair dealing claim without noting any disagreement with the content of the judgment or disposition of that claim. *Cf. Cruz v. Furniture Technicians of Houston, Inc.*, 949 S.W.2d 34, 35 (Tex. App.—San Antonio 1997, pet. denied) (appellants could not assert factual insufficiency grounds on appeal when trial court's judgment conformed in all respects with appellants' motion for judgment, which did not reserve complaint for appeal); *Casu v. Marathon Ref. Co.*, 896 S.W.2d 388, 389 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("Where a litigant moves the trial court to enter a judgment, and the trial court enters the judgment, the litigant cannot later complain of that judgment."). We agree. The judgment Tejas presented to the trial court exceeded the proposed ruling stated in the court's letter, and although the parties filed numerous letter briefs with the trial court concerning whether Tejas's proposed judgment accurately reflected the court's ruling, Tejas never complained about the trial court's implied disposition of the good-faith claim or otherwise noted any disagreement with the disposition stated in the judgment.[10] We therefore conclude that Tejas waived the right to complain about the judgment on appeal. *See Casu*, 896 S.W.2d at 390 ("To preserve the right to complain about a judgment on appeal, a movant for judgment should state in its motion to enter judgment that it agrees only with the form of the judgment, and note

---

[10] In its briefing to this Court, Tejas conceded that the trial court's judgment impliedly denied its good-faith claim.

its disagreement with the content and result of the judgment." (citing *First Nat'l Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989))).[11]

Tejas's sole issue on cross-appeal is overruled.

## CONCLUSION

For the reasons stated, we reverse the trial court's judgment and affirm the Division's order in all respects.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson;
  Concurring Opinion by Justice Henson

Reversed and Rendered

Filed:   February 2, 2012

---

[11]   In any event, it is questionable whether the statutory duty of good faith and fair dealing would extend to acts of contract *formation* like those at issue in this case. *See* Ronald J. Scalise Jr., *Why No "Efficient Breach" in the Civil Law?: A Comparative Assessment of the Doctrine of Efficient Breach of Contract*, 55 Am. J. Comp. L. 721, 723 n.13 (2007) ("Unlike the European conception of good faith in contracts, the American idea does not apply to the contract formation stage.") (citing the Restatement (Second) of Contracts § 205, cmt. c and Uniform Commercial Code § 1-203). In accordance with the statute, the duty is owed to "[e]ach party to a franchise." Tex. Occ. Code Ann. § 2301.478 (West 2009). A "franchise" is "one or more contracts between a franchised dealer as franchisee and a manufacturer or a distributor as franchisor . . . ." *Id.* § 2301.002(15) (West Supp. 2011). Therefore, the duty, by its terms, appears to apply only to the performance and enforcement of an existing contract. Construing the statute in this way would be consistent with the Uniform Commercial Code, which similarly governs commercial business transactions and imposes a duty of good faith and fair dealing in the performance and enforcement of a contract or a statutory duty. *See* Tex. Bus. & Comm. Code Ann. §§ 1.201 (definition of "good faith"), .304 (duty of good faith) (West 2009); *accord* Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").