

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| NEW WORLD CAR NISSAN, INC. D/B/A WORLD CAR HYUNDAI, AND NEW WORLD CAR IMPORTS SAN ANTONIO, INC. D/B/A WORLD CAR HYUNDAI, | § | No. 08-20-00147-CV |
| | § | Appeal from the |
| | § | 53rd Judicial District Court |
| Appellants, | § | of Travis County, Texas |
| v. | § | (D-1-GN-20-002662) |
| HYUNDAI MOTOR AMERICA AND TEXAS DEPARTMENT OF MOTOR VEHICLES, | § | |
| Appellees. | § | |

# **O P I N I O N**

This is an administrative appeal in which an automobile distributor sought judicial review of a final order by the Board of the Texas Department of Motor Vehicles ("the Board").[1] In five issues, Appellants challenge the final order, alleging the Board prejudiced its substantial rights. For the reasons that follow, we affirm.

## **BACKGROUND**

### *Factual Background*

---

[1] This case was transferred from our sister court in Travis County, Texas pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. Section 73.001. We follow the precedent of the Austin Court of Appeals to the extent it might conflict with our own. *See* TEX.R.APP.P. 41.3.

Appellants, New World Car Nissan, Inc. d/b/a World Car Hyundai, and New World Car Imports San Antonio, Inc. d/b/a World Car Hyundai (collectively, "New World Car") own and operate two Hyundai dealerships in San Antonio, Texas: World Car North and World Car South. Ahmad Zabihian is the owner of the New World Car entities. World Car North is an exclusive Hyundai dealership, while World Car South sells both Kia and Hyundai products and services. Red McCombs Hyundai is another dealership is San Antonio and is the only other Hyundai dealership in San Antonio. Red McCombs is New World Car's primary Hyundai competitor.

Appellee Hyundai Motor America ("HMA"), the wholesale distributor for Hyundai products and services in the United States, was the distributor for all Hyundai dealerships located in San Antonio during the relevant time period.

### Vehicle Allocation

HMA's vehicle allocation system consists of formula allocations, discretionary allocations, and manual allocations. HMA has used this formula since 2006, and the formula is applied the same way to each Hyundai dealer. The formula allocations make up eighty-five percent of the vehicle allocations, and the discretionary allocations make up the remaining fifteen percent of allocated vehicles. Discretionary allocations are made by HMA's general managers. Discretionary allocations are incentivized by offering dealers optional programs to participate in, which can improve a dealer's position in the allocation system. Those programs include using Hyundai as service loaners, adding the luxury Equus line, remodeling of the facility, and making dealerships exclusively Hyundai-branded.

In 2009, Tom Hetrick was Hyundai's regional general manager responsible for the San Antonio region. During the first six months of Hetrick's tenure as regional general manager, he provided 134 cars through discretionary allocation to Red McCombs and twenty to New World

Car. The differences in discretionary allocation between Red McCombs and New World Car continued through 2013.

While Red McCombs maintained high inventory levels at its two locations during the recession, World Car voluntarily reduced its inventory in 2009 and 2010. Red McCombs added the luxury Equus line, renovated both its dealerships, and participated in HMA's service loaner program, which allowed Red McCombs to sell cars into the program, removing them from inventory, and in turn, increased the number of formula-allocation vehicles offered to Red McCombs. Although it was available to all Hyundai dealers, World Car chose not to participate in HMA's service loaner program. Red McCombs participated in Hyundai's service loaner program and was provided with an increase in discretionary allocations. However, from 2010 until 2013, HMA had fewer vehicles to allocate under any method of allocation due to the reduced supply of Hyundai's caused by the Japanese tsunami that devastated Japanese manufacturing.

**Sales Efficiency**

HMA uses sales efficiency to measure a dealer's sales performance by comparing a dealer's total sales to the sales the brand expects the dealer to achieve in the dealer's primary market area. HMA calculates a dealer's sales efficiency by applying HMA's national average sales penetration in a specific vehicle segment, to the number of vehicles registered in that segment in the dealer's primary market area. For each of its dealers, HMA measures sales efficiency in the same manner.

*Procedural Background*

In November 2013, New World Car filed the underlying complaint with the Texas Department of Motor Vehicles alleging HMA was in violation of multiple sections of the Texas

Occupations Code. *Hyundai Motor Am. v. New World Car Nissan Inc.*, 581 S.W.3d 831, 834 (Tex.App.—Austin 2019, no pet.).[2] Specifically, New World Car alleged,

> Hyundai violated the following provisions of the Occupations Code: (1) Section 2301.467(a)(1) by 'requiring [New World Car] to sell more vehicles than [Hyundai] actually provided in order to be considered 100% sales efficient'; (2) Section 2301.468 by treating New World Car 'unfairly or inequitably in the application of a standard or guideline' and by providing 'unfair and inequitable vehicle inventory allocations'; and (3) Section 2301.478(b) by providing 'unfair allocations of insufficient inventory' and 'requiring [New World Car] to sell more inventory than it was provided.'

*Id*. The Department referred the matter to the SOAH for a contested-case hearing before an Administrative Law Judge ("the ALJ"). *Id*. After discovery and an evidentiary hearing, the ALJ issued a proposal for decision ("PFD"), concluding New World Car failed to prove HMA violated the Texas Occupations Code and recommended the Board deny New World Car's claims. *Id*. In November 2016, the Board rejected the ALJ's analysis and issued a final order that "overturned" the ALJ's "conclusion." *Id*. The final order did not include fact findings or legal conclusions. *Id*.

After granting HMA's motion for rehearing, the Board amended the final order in August 2017 with new and modified findings and conclusions to replace those of the ALJ that the Board had rejected. *Id*. The final order found HMA was in violation of the Texas Occupations Code. *Id*. On appeal, the Third Court of Appeals reversed the Board's final order and remanded the case to the Board for further consideration. *Id*. On remand, the Board, with several new members, adopted the ALJ's 2016 recommendation and entered a new final order in February 2020 denying New

---

[2] The crux of the appeal before the Third Court of Appeals was the lawfulness of the Board's modifications to the ALJ's fact findings and legal conclusions—none of which are currently at issue in this appeal. *Id.* Specifically, "Hyundai raise[d] three basic contentions: (1) the Board usurped the ALJ's role in the contested case process by acting as the finder of basic and adjudicative facts; (2) the Board failed to articulate a rational connection between an underlying agency policy and [its] altered findings of fact and conclusions of law; and (3) the Board engaged in improper, retroactive ad hoc rule-making." *Id.* [Internal quotation marks omitted]. Again, these issues are not before us in this current appeal.

World Car's claims. New World Car filed a motion for rehearing, which was overruled by operation of law. New World Car then filed a petition for judicial review and this appeal followed.

***Standard of Review***

The highly deferential substantial evidence standard of the Texas Administrative Procedure Act ("APA") governs our judicial review of the Board's final order. *See* TEX.GOV'T CODE ANN. § 2001.174. The APA authorizes reversal or remand of an agency's decision that prejudices an appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions: (1) violate a constitutional or statutory provision; (2) exceed the agency's statutory authority; (3) were made through unlawful procedure; (4) are affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. TEX.GOV'T CODE ANN. § 2001.174(2)(A)-(D), (F)); *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 440 (Tex.App.—Austin 2011, pet. denied).

Under this standard, we cannot substitute our judgment on the weight of the evidence for that of the agency. TEX.GOV'T CODE ANN. § 2001.174. The APA authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to establish whether they are reasonably supported by substantial evidence, considering the reliable and probative evidence in the record as a whole. *Tex. Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 244 (Tex.App.—Austin 1997, no writ). We must presume the agency's decision is supported by substantial evidence, and although evidence in the record may preponderate against the agency's decision, it may nevertheless amount to substantial evidence. *Id*. The test is not whether the agency reached the correct conclusion, but whether a reasonable basis exists in the record to support the agency's

5

action. *Id*. We will affirm the agency's action if the evidence is such that reasonable minds could have reached the same conclusion. *Id*. Accordingly, a reviewing court may not set aside an agency order "merely because testimony was conflicting or disputed or because it did not compel the result reached by the agency." *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Therefore, reviewing courts need only be concerned with the reasonableness of the administrative order, not its correctness. *Id*.

**DISCUSSION**

In five issues, New World Car challenges the Board's final order. New World Car argues the Board prejudiced its substantial rights by precluding any written presentation, relying upon statements and assumptions outside the record, and adopting erroneous interpretations of the law. New World Car requests we reverse and remand, we disagree.

1. **New World timely filed a petition for judicial review; accordingly, this Court maintains jurisdiction.**

As a threshold matter, Appellees argue New World Car did not timely file a petition for judicial review and request dismissal for want of jurisdiction. A petition for judicial review must be filed "not later than the 30th day after the date" the Board's final order becomes final and appealable, which occurs thirty days after the motion for rehearing is overruled by operation of law. TEX.GOV'T CODE ANN. §§ 2001.176(a), 2001.144(a)(2)(B). Appellees argue New World Car had thirty days from April 13, 2020, to timely file a petition for review, and because the petition for review was filed on May 14, 2020, it was "one day late." New World Car responds Appellees are applying an older, inapplicable version of the statute. We agree.

At issue is whether the 2015 amendments to the APA were applicable at the time New World Car filed its petition for review. According to the legislative history of the 2015

6

amendments, the amended version of the APA applies "only to an administrative hearing that is set by the State Office of Administrative Hearings ["SOAH"], or another state agency conducting an administrative hearing, on or after the effective date of this Act." Tex. S.B. 1267, 84th Leg., R.S. (2015). The effective date of the Act was September 1, 2015. *Id.* Thus, an administrative hearing, and any decision or appeal deriving therefrom, set *on* or *after* September 1, 2015, is governed by the 2015 amended version of the APA. *See id.* Otherwise, a hearing set before September 1, 2015, would be governed by the law in effect at the time the hearing was set. *Id.* In this case, the SOAH judge set a hearing on the merits for September 14, 2015; thus, the applicable law is the 2015 amended version of the APA. *See* Order No. 8 Granting Continuance of Prehearing Conference and Hearing on the Merits.

Appellees argue the pre-2015 version of the APA applied because the SOAH judge's order setting the hearing on the merits was signed on March 19, 2015, before the 2015 amendments to the APA became effective. However, for purposes of determining which version of the APA is applicable, one must look to when the hearing is "set," i.e., when the hearing is to occur. *See Fisher v. Pub. Util. Comm'n of Tex.*, 549 S.W.3d 178, 182 (Tex.App.—Austin 2018, no pet.)(explaining when determining which version of the APA is applicable, the "plain text of the legislation directs us to focus on when the administrative hearing 'is set'—i.e., 'prescribe[d] a time for,'" and not when an order is issued). Under this rule, it is irrelevant that the order setting the hearing was signed before the effective date of the 2015 amendments; what is relevant is the hearing on the merits occurred *after* that effective date. *See id.* Therefore, the 2015 version of the APA is applicable here.

Under the current version of APA (post-2015 amendments), a party timely files a petition for judicial review if the petition is filed no later than thirty days after the agency's order becomes

final and appealable. TEX.GOV'T CODE ANN. § 2001.176. When there is a motion for rehearing, as in this case, the agency's order becomes final when the motion for rehearing is overruled by operation of law—fifty-five days after the agency's order was signed. *See* § 2001.144 (decision becomes final when motion for rehearing is overruled by operation of law); *see* § 2001.146 (motion for rehearing is overruled by operation of law fifty-five days after order is signed). The relevant timeline is as follows:

- The agency's final order was signed on **February 19, 2020**.

- New World Car's motion for rehearing, filed March 9, 2020, was overruled by operation of law fifty-five days after February 19, 2020, which was April 14, 2020. Thus, **April 14, 2020,** is the date the agency's order became final and appealable.

- New World Car filed its original petition for judicial review on **May 14, 2020**, thirty days after the agency's order became final and appealable on April 14, 2020.

Because New World Car filed its petition for review no later than thirty days after April 14, 2020—when the agency's order became final—New World Car's petition was timely, and this Court maintains jurisdiction. We now turn to the merits of the arguments on appeal.

2. **New World Car has not shown the Board prejudiced its substantial rights by prohibiting written briefing or materials in violation of the Texas Government Code.**

In its first substantive issue, New World Car argues the Board's final order was adopted through unlawful procedure because the Board prohibited New World Car from filing briefing in violation of the APA.

Section 2001.062 of the APA provides:

(a) In a contested case, if a majority of the state agency officials who are to render a final decision have not heard the case or read the record, the decision, if adverse to a party other than the agency itself, may not be made until:

> (1) a proposal for decision is served on each party; and
>
> (2) an opportunity is given to each adversely affected party to file exceptions and present briefs to the officials who are to render the decision.

TEX. GOV'T CODE ANN. § 2001.062(a)(2). According to New World Car, this procedural rule promotes due process by affording each side the opportunity to present its arguments in writing. In January 2020, the Texas Department of Motor Vehicles Agency informed the parties via email that the matter was set to be heard before the Board on February 6, 2020, and "Each party will have the opportunity to make a 10 minute presentation to the Board and also a 5 minute rebuttal presentation." In a subsequent email, the Board's Associate General Counsel informed the parties, "Only oral presentations by the parties will be allowed. No written materials and/or audio-visual aids, such as PowerPoints will be allowed." The following documents were attached to the Executive Summary for consideration by the Board: the ALJ's PFD, the ALJ's Exceptions Letter, the Board's Final Order of November 3, 2016, the Board's orders on rehearing dated August 17, 2017 and October 4, 2017, and the Third Court of Appeals opinion and mandate.

New World Car alleges the Board did not request or receive briefing from the parties, did not set a briefing schedule, did not provide them the opportunity to present a written brief before the Board made its decision at the February 6, 2020, meeting, and did not allow New World Car to give the Board a copy of its proposed final order. The Board argues it is unclear what written brief New World Car is complaining it was not allowed to present to the Board; the PFD was served on New World Car, was submitted to the Board members, which New World Car responded to by exercising its opportunity to file exceptions to the PFD. We agree. New World Car suggests its exceptions to the PFD constituted previous briefing that should have been presented to the

9

Board.[3] However, Section 2001.062 of the Texas Government Code specifically distinguishes between "exceptions" and "briefs" to the officials who render the decision. *Compare id.* § 2001.062(a)(2) *with* § 2001.062(b).

New World Car's contentions rest on a misreading of Section 2001.062(a)(2). Neither Section 2001.062(a), any provision of Chapter 2301 of the Texas Government Code, nor any Board rule, requires a party's exceptions to a proposal for decision to be presented to Board members. Moreover, the Board is not required to solicit written briefing from the parties; it is only required that parties be given the opportunity to present briefing to the Board. *Id.* § 2001.062(a)(2).

To establish an unlawful procedure claim, New World Car would not only need to show that the Board's final order was adopted through unlawful procedure, but also that the unlawful procedure prejudiced its substantial rights. *Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd.*, 974 S.W.2d 906, 912–13 (Tex.App—Austin 1998, pet. denied). New World Car has not shown its substantial rights were prejudiced, and it did not exercise its opportunity to present briefing to the Board. New World Car chose not to file a brief to the Board, but rather, submitted a proposed final order.[4] Our review of the record shows New World Car did not tender a brief for presentation to the Board, did not ask the Board to postpone consideration of the PFD until after it had filed a brief for the Board to consider, and did not request that the Board members review its exceptions to the PFD before the February 6 meeting. New World Car's contentions suggest the Board is required

---

[3] New World Car appears to refer to its exceptions and the reply it filed in support of those exceptions. Assuming those documents can be considered "briefs," they were directed to the ALJ, not to the Board. New World Car made no request that such "briefing" be provided to the Board at or before the February 6 meeting. *See* T.A.C. § 155.507(c)(stating exceptions are directed to the ALJ).

[4] The Board argues: "Even if the proposed final order, which [New World Car] maintains is a 'pleading,' is considered to be a 'brief,' [New World Car] presented it to the Board – a fact [New World Car] never mentions in its Brief of Appellants . . . . Before the Board members began their deliberations, NWC's counsel read the proposed order to the Board, argued the points raised in it, and answered Board members' questions concerning those points."

10

to review portions of the administrative record a litigant selects or singles out for consideration. New World Car is incorrect.

The APA does not require the Board to consider specific documents from the administrative record. *See id*. § 2301.709(a)(board "may" consider materials timely submitted). In any case, New World Car never tendered a written brief directed to the Board. The sole document directed to the Board submitted before the meeting was its proposed final order, which New World Car insists is a "pleading," not a brief. Nevertheless, the Board allowed New World Car to present this proposed final order by reading it to Board members during the February 6 meeting.

HMA argues the Board's questions, statements, and deliberations demonstrated its consideration of New World Car's proposed order, and its collective knowledge and understanding of the contested issues in deciding whether to reject or adopt the PFD. We agree. The purpose of § 2001.062(a) was satisfied. New World Car's substantial rights were not prejudiced, and error, if any, was rendered harmless. Harmless error does not warrant reversal of an agency decision. *See Nobles v. Emp. Retirement Sys. of Tex.*, 53 S.W.3d 483, 489 (Tex.App.—Austin 2001, no pet.). Issue One is overruled.

3. **New World Car has not shown the Board prejudiced its substantial rights by improperly relying on evidence and statements outside of the administrative record.**

In Issue Two, New World Car contends the Board's final order was made through its decision to adopt the PFD through unlawful procedure and is arbitrary and capricious because the decision is based on "information outside of the record that is not supported by, or indeed contradicted by, the record evidence in this case . . . ." New World Car complains of five statements made by HMA's counsel, which New World Car claims prejudiced its rights. We analyze each statement in turn.

11

**Statement 1:** "The testimony and the evidence was: Yes, you, World Car, would have gotten more discretionary allocations had you participated." According to New World Car, this statement influenced Board members to base their decision on this "erroneous theory, unsupported by any evidence," that if New World Car had participated in more HMA programs, it would have received more discretionary allocations. New World Car maintains there is no evidence to support the aforementioned "speculative assertion." We disagree.

HMA argues there is evidence HMA made discretionary allocations to dealers, such as McCombs, who made material changes to improve the course of its performance, such as renovating its facilities, becoming exclusive Hyundai dealers, and taking on the Equus line. We agree. New World Car did not undertake any of these opportunities and New World Car has not disputed its non-participation.

New World Car argues that when it did renovate, HMA did not give New World Car discretionary allocations, breaking its "promise" to do so. However, New World Car's North dealership did not complete renovations until 2014, after the inventory shortage ended. Additionally, from late 2013 through April 2014, HMA substantially increased its allocations to World Car North. By July 2014, both New World Car dealerships had all the inventory to meet its demand.

Aside from asserting conclusory statements, New World Car has not proved the Board's decision was based on this statement. To the contrary, Finding of Fact No. 27 states, "World Car chose not to participate in the available programs provided by Hyundai that *could* have increased the allocation available to World Car." (emphasis added). As to this statement, we find the Board did not rely on evidence outside of the administrative record.

**Statement 2:** New World Car alleges one board member assumed New World Car knew "in advance" of entering into the franchise agreement that "there's a 15 percent discretionary allocation." The complained of statement by the board member, in full context, is as follows:

> Just a couple of thoughts. One is in regards to codifying franchise agreements that they have to be specific in every manner as far as the allocation of cars of vehicles, I think that gets in the area of where we're trying to basically determine what free enterprise is. And I think if a dealer who's obviously a very competent dealer, has ten dealerships, *enters into a franchise agreement where he knows in advance there's a 15 percent discretionary allocation*, he's doing so with open eyes and as a prudent man. And to say he's not and we need to protect him tells me he's imprudent, which I don't think is true. I think he's obviously a competent person and a competent dealer. (emphasis added).

New World Car argues it did not know, prior to entering the franchise agreement, of a fifteen percent discretionary allocation. The following findings of fact discuss allocations:

8. Hyundai's allocation consists of formula allocations, discretionary allocations, and manual allocations.

9. Formula allocations make up approximately 85% of the vehicles allocated and are allocated through a formula and computer program.

10. Under the allocation algorithm, vehicles are offered to dealers based on each dealer's inventory and the average number of vehicles sold by the dealer in the previous 90 days. The system allocates vehicles, one at a time, to the dealer in the region with the lowest days' supply for each respective model.

11. Discretionary allocations are made by Hyundai's regional general manager, who may distribute up to 15%.

To begin, these findings do not state, or insinuate, that New World Car knew of the fifteen percent discretionary allocation prior to entering the agreement. As to the complained of statement itself, we do not believe the context in which the board member spoke, proves the Board assumed New World Car knew in advance of a fifteen percent discretionary allocation. New World Car claims this statement is an "assumption, contradicted by the record," but does not offer evidence to prove otherwise, and does not prove the Board actually relied on this statement.

13

Aside from asserting conclusory statements, New World Car has not proved the Board's decision was based on this statement. We find the Board did not rely on evidence outside of the administrative record.

**Statement 3:** A board member referenced a law in Arkansas as support for the notion that discretionary allocations are "customary in the industry." The complained of statement by the board member, in full context, is as follows:

> Toyota, Ford and many other manufacturers utilize these same kind of programs. And I'm not aware of any Texas case or decision suggesting that these programs are inappropriate or wrong. To the contrary, these programs are so customary that in one of our neighboring states Arkansas, codified in their Motor Vehicle Code to say the following: A franchisor maty, consistent with its allocation obligations at law to its other dealers, provide a dealer a commitment to supply additional vehicles or provide a loan or grant of money as an inducement for the dealer to expand, improve, remodel or renovate its facilities if the provisions of the commitment are contained in writing, voluntarily agreed by the dealer, and are made available on substantially similar terms to any of the franchisor's dealers who voluntarily agree to make a substantially similar facility expansion, improvement, remodeling, alteration, or renovation. So there's really no argument here that providing additional vehicles to dealers as a reward for investing in their facilities as being customary in the industry and certainly not an unreasonably discriminatory practice by any stretch.

New World Car contends the Board should not have based its decision on the Arkansas law or the notion that discretionary allocations are customary. HMA argues, "There was nothing improper about this reference to Arkansas law, and more importantly, it was harmless." We agree. The Board, as is its very function, was entitled to come to its owns conclusions supported by the evidence—even if that conclusion is unfavorable to one party. In any case, we do not construe the Board member's statement to mean that the aforementioned Arkansas law was actually relied upon, but rather, was merely used as a means to explain just how customary this particular Board member believed discretionary allocations are. Again, aside from asserting conclusory statements,

14

New World Car has not proved the Board's decision was based on the complained of statement.

We find the Board did not rely on evidence outside of the administrative record.

**Statement 4:** New World Car complains of a statement made by HMA's counsel, in which

the following was said:

> [T]he Court of Appeals said the ALJ found there was no requirement of a 100 percent sales efficiency, it's not required in the dealer agreement. These are findings that were made and the *Third Court says those are basic findings that the ALJ makes, and the Board cannot make contrary findings*. (emphasis added).

New World Car claims this is not what the Third Court of Appeals said. What the Third Court of

Appeals stated is as follows:

> [T]he ALJ found that Hyundai did *not* require adherence to the sales standard. By modifying Finding of Fact 52—which constituted the making of an additional finding of basic fact in direct contravention of a basic finding of the ALJ—and *failing to support its modification with citations to record evidence, the Board acted arbitrarily and capriciously, abused its discretion, and violated Section 2002.058(e)*. (emphasis added).

New World Car wrongly asserts the Third Court of Appeals held the Board was free to make

changes to the ALJ's basic findings concerning sales efficiency as long as it included record

citations to support the changes. The Third Court of Appeals did recognize that the absence of

such citations demonstrated the Board's failure to explain and justify its rejection of the ALJ's

findings, as required by § 2001.058(e) of the APA, but the Third Court of Appeals was clear that

the Legislature delegated the duty of making basic fact-findings to the ALJ, and the Board exceeds

its authority if it sets aside such findings and makes new, contrary findings when the evidence on

which the findings are based conflicts or involves credibility choices. *See Hyundai*, 581 S.W.3d

at 841-42. [Internal citations omitted]. The Third Court of Appeals stated:

> An ALJ is a 'disinterested hearings officer' to whom the legislature has delegated the duty of basic fact-finding. An agency cannot frustrate the delegation of the fact-finding role by ignoring an ALJ's 'findings with which it disagrees and

15

substitut[ing] its own additional findings.' When the APA or other applicable enabling statute does not specifically provide for an agency's board to find facts in addition to those found by the hearing examiner, the board exceeds its authority by so doing. 'If a board could find additional facts, resolving conflicts in the evidence and credibility disputes, it would then be serving as its own factfinder despite delegating the factfinding role to a hearing examiner, and the process of using an independent factfinder would be meaningless.'

*Id.* [Internal citations omitted]. In any case, according to New World Car, the Board members who heard the alleged misstatement of law by HMA's counsel, were improperly persuaded based on an erroneous premise, but this does not prove the Board was actually improperly or erroneously persuaded. Thus, aside from asserting conclusory statements, New World Car has not proved the Board's decision was based on the complained of statement. We find the Board did not rely on evidence outside of the administrative record.

**Statement 5:** According to New World Car, HMA's counsel misled the Board by claiming sales efficiency has "nothing to do" with allocations. The complained of statement made by HMA's counsel, in full context, is as follows:

But I think it's very important for you to understand that World Car's own witnesses said that *the sales efficiency numbers had nothing to do with the allocations*. This is page 452 of the transcript. The question: So do you understand that sales efficiency calculations which are based off of registrations, do you understand the sales efficiency numbers had nothing to do in the Hyundai system of allocations? The answer: Yes. This is a World Car official. Nothing at all. Right? Answer: Yes. Another Hyundai official, same thing. This is on page 597. Mr. Willis, a Hyundai official. Question: And I think it's been established fairly clearly that sales efficiency plays no part in inventory or allocation. Correct? Answer: That's my understanding.

New World Car points us to the testimony of Hetrick and claims he testified "he used his discretionary allocations to reward dealers who met 100% sales efficiency." However, Hetrick never testified 100% sales efficiency was an eligibility requirement for obtaining additional discretionary allocations. The following is the relevant, accurate testimony of Hetrick:

16

Q. Okay. Now, let's see if I understand part of this. You chose to use your discretion to reward dealers who meet sales efficiency targets, right?

A. Some.

Q. And those who don't, you don't reward?

A. Not necessarily.

New World Car seemingly argues because it did not meet 100% sales efficiency and did not receive the allocations it wanted, it must follow that HMA's counsel misled the Board by claiming sales efficiency has nothing to do with allocations. We disagree. Additionally, aside from asserting conclusory statements, New World Car has not proved the Board's decision was based on the complained of statement. We find the Board did not rely on evidence outside of the administrative record. Issue Two is overruled.

**4. New World Car has not shown The Board prejudiced its substantial rights by adopting an alleged erroneous interpretation of Section 2301.467(a)(1) of the Texas Occupations Code.**

In Issue Three, New World Car argues the Board improperly interpreted Section 2301.467(a)(1) to require that in order to establish adherence to an unreasonable sales or service standard, the sales or service standard must be found in the dealer agreement—i.e., the Board misinterpreted the statute by limiting the inquiry to whether there was an express requirement of 100% sales efficiency in the dealer agreement. As a result, New World Car maintains the Board prejudiced its substantial rights by making a decision that was arbitrary and capricious.

Section 2301.467(a)(1) of the Texas Occupations Code states a manufacturer or distributor may not "require adherence to unreasonable sales or service standards." TEX.OCC.CODE ANN. § 2301.467(a)(1). According to New World Car, HMA required New World Car to meet an

17

unreasonable sales standard—a 100% sales efficiency standard. The ALJ concluded, which the Board adopted, that there was no violation of Section 2301.467(a)(1), reasoning:

> There is no requirement in the Dealer Agreement between World Car and Hyundai that requires World Car to be 100% sales efficient. There is a section in the standard provisions of the Dealer Agreement that identifies sales efficiency as a criterion that can be considered in evaluating dealer performance; it does not state that a dealer must be 100% sales efficient. Thus, there is no requirement that World Car meet any standard for sales efficiency. Therefore, World Car failed to show that the sales efficiency metric requires it to meet an unreasonable sales standard.

New World Car argues the statute does not limit violations to express requirements found in a franchise agreement, but rather, the statute prohibits any required adherence to an unreasonable sales standard, *wherever* that standard is found. According to New World Car, "The statute does not say that a distributor is prohibited from requiring adherence to an unreasonable sales standard only if that standard is found 'in the Dealer Agreement.'" We find New World Car has mischaracterized the Board's interpretation of Ssction 2301.467(a)(1).

When construing a statute, the court's objective is to ascertain and effectuate legislative intent. *Tex. Dep't of Protective & Reg. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). An administrative agency's interpretation of a statute, which the agency is charged with enforcing, is entitled to serious consideration by reviewing courts, so long as that interpretation is reasonable and does not contradict the plain language of the statute. *Emp. Retirement Sys. of Tex. v. Jones*, 58 S.W.3d 148, 151 (Tex.App.—Austin 2001, no pet.)[Citation omitted]. An agency's decision is arbitrary and capricious if it: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors the legislature directs it to consider but still reaches a completely unreasonable result. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994).

18

In the Board's final order, the Board did not interpret Section 2301.467(a)(1) to mean an unreasonable sales or service standard *must* be in a dealer agreement to constitute a violation under this section. Based on the facts presented, the Board merely looked to the dealer agreement as evidence of whether the sales efficiency standard was in fact a requirement New World Car had to comply with to maintain its dealerships. The Board's conclusion and underlying supporting findings as to whether Section 2301.467(a)(1) was violated is neither arbitrary nor capricious; it is based upon a proper interpretation of Section 2301.467(a)(1) and was made in response to specific arguments New World Car made in its post-hearing briefing. The ALJ, and in turn, the Board, focused on the terms of the dealer agreement because New World Car itself argued in its post-hearing brief that HMA required New World Car to be 100% sales efficient to avoid a material breach of the contractual provisions of the dealer agreement. This was reasonable for the Board to do. The ALJ properly found "there is no requirement in the Dealer Agreement between World Car and Hyundai that requires World Car to be 100% sales efficient." New World Car does not contend this finding is unsupported by substantial evidence. Issue Three is overruled.

**5. New World Car has not shown the Board prejudiced its substantial rights as to the Section 2301.468 claim by adopting the ALJ's conclusion.**

In Issue Four, New World Car argues its Section 2301.468 claim was affected by errors of law, not reasonably supported by substantial evidence, and was an abuse of discretion because the Board adopted the ALJ's legally erroneous conclusion, which was contradicted by the record evidence. The former, applicable version of Section 2301.468 of the Texas Occupations Code provides, "A manufacturer, distributor, or representative may not . . . discriminate unreasonably between or among franchisees in the sale of a motor vehicle owned by the manufacturer or

19

distributor." Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 5, 2001 TEX.GEN.LAWS 4920, 4952 (codified at TEX.OCC.CODE ANN. § 2301.468).

New World Car alleges the Board misapplied the concept of "unreasonable discrimination" and thus erred in its application of Section 2301.468 for three reasons: (1) "whether discrimination was 'unreasonable' depends on whether the dealerships were similarly situated;" (2) "the dealerships' sales levels did not justify the disproportionate allocations from 2010 to 2013;" and (3) "the ALJ (and thus the Board) improperly speculated about how much inventory World Car Hyundai might have received if it had participated in the service loaner program, renovated, and added the Equus line of vehicles . . . ." All three reasons relate to the evidence presented as to whether the discretionary allocation of vehicles by HMA equates to unreasonable discrimination under the Texas Occupations Code.

A matter is generally considered to be "unreasonable" if it is "arbitrary, capricious, without substantial cause or reason, or lacking a legitimate business justification." *Star Houston v. Mercedes-Benz USA*, MVD Cause No. 09-00346.LIC, PFD at 44-45 (2014)(defining "unreasonable" in applying Section 2301.468). From 2010 to 2013, World Car North and World Car South received discretionary pool and manual allocations from HMA. In some years, New World Car's dealerships received a greater percentage of discretionary allocations than McCombs, and in other years, New World Car received less. In 2013, World Car South received no discretionary allocations, and neither did other dealers in the district during this period. In 2010, McCombs Superior began the process of becoming an exclusive Hyundai dealer, which included taking on the Equus line. McCombs Northwest also took on the Equus luxury line, which required additional facility upgrades. In the fourth quarter of 2010, McCombs committed to installing the showroom, the Equus line, and corporate identity kits at the Northwest dealership. McCombs

20

dealerships made further improvements and renovations at its facilities in 2011 and 2012, which totaled approximately $2.5 million in upgrades, and both dealerships participated in Hyundai's service loaner program.

New World Car took no comparable actions, despite HMA's encouragement to do so. World Car South remains a dual dealership, and World Car North did not complete its renovations until 2014, by which time the inventory shortage had ended. New World Car also did not participate in Hyundai's service loaner program.[5] Thus, based on the evidence, the ALJ and the Board reasonably found the New World Car and McCombs dealerships were not "similarly situated" during the relevant time period. McCombs received more discretionary allocations because of the numerous steps it took to prove brand commitment to Hyundai—steps New World Car refused to take—and based on the evidence, the Board reasonably concluded New World Car failed to prove HMA engaged in unreasonable discrimination. The ALJ summarized its conclusion as follows:

> World Car could have participated in all of these Hyundai programs, which would most likely have increased the sales rate and reduced the daily supply of vehicles, resulting in additional allocation. *World Car chose not to participate*. All dealers that chose to participate in the programs would have increased allocation and would have been eligible for discretionary allocation that was given by regional general managers to reward dealers for facility upgrades, renovations, and exclusivity. World Car's choice not to engage in those programs worked to its detriment in terms of receiving discretionary allocation. But Mr. Hetrick's decision to reward Red McCombs was not unreasonably discriminatory. Rather, it was his reasonable business judgment to reward the Red McCombs dealerships for remodeling, becoming exclusive, adding the Equus line, and participating in the service loaner programs.

---

[5] New World Car states it did not participate in Hyundai's service loaner program because "(1) it did not have sufficient inventory to devote to 'true' service loaners, and (2) HMA's service loaner program deceives the public by prematurely starting the customer's warranty on a vehicle." New World Car also states, "even if World Car Hyundai had participated in HMA's service loaner program, the effect on allocation would have been minimal."

It was for these reasons the ALJ, and the Board, found New World Car failed to meet its burden of proving HMA unreasonably discriminated against them in providing discretionary allocations. Aside from asking us to reweigh the evidence and discredit testimony and reasonable inferences the ALJ and the Board found persuasive, New World Car also essentially asks us to interpret Section 2301.468(2) to require that competing dealers in the same market receive the same allocations. This we will not do.

It is the Board that has the authority to determine the weight to place on the evidence, and a court may not substitute its judgment for that of the agency on matters committed to agency discretion. *Austin Chevrolet Inc. v. Motor Vehicle Bd. & Motor Vehicle Div. of Tex. Dep't of Transp.*, 212 S.W.3d 425, 431 (Tex.App.—Austin 2006, pet. denied). Under the substantial evidence standard, an agency is "the sole judge of the weight of the evidence and the credibility of the witnesses . . . it can accept or reject witness testimony and may accept some of the testimony and disregard the rest." *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. Of the Tex. Dep't of Transp.*, 179 S.W.3d 589, 601 (Tex.App.—Austin 2010, no pet.)[Internal citations omitted]. An abuse of discretion exists when a trier of fact acts without reference to any guiding rules or principles, which is not what the Board did here. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003).

The record shows the Board considered all the evidence presented at the hearing, weighed the evidence, and reached a reasonable conclusion—New World Car failed to prove unreasonable discrimination. The Board did not err in its application of Section 2301.468, and the Board's decision to adopt the ALJ's legal conclusion, which was supported by substantial evidence, was not an abuse of discretion. The Board did not prejudice New World Car's substantial rights as to its Section 2301.468 claim. Issue Four is overruled.

**6. New World Car has not shown the Board prejudiced its substantial rights as to the Section 2301.478 claim by adopting the ALJ's conclusion.**

In Issue Five, New World Car contends its Section 2301.478 claim was affected by errors of law, not reasonably supported by substantial evidence, and was an abuse of discretion because the Board adopted the ALJ's legally erroneous conclusion, which was contradicted by the record evidence.

Section 2301.478 of the Texas Occupations Code states, "Each party to a franchise owes to the other party a duty of good faith and fair dealing that is actionable in tort." TEX.OCC.CODE ANN. § 2301.478(b). New World Car specifically alleges HMA violated its duty of good faith and fair dealing because it did not act fairly or in good faith with New World Car in allocating vehicle inventory and in imposing sales requirements. In Conclusion of Law No. 9, the ALJ, and in turn, the Board, concluded:

> World Car failed to meet its burden of proof to show that Hyundai violated its duty of good faith and fair dealing through allocations and sales efficiency because Hyundai calculated sales efficiency in the same manner for all dealers, and World Car chose not to participate in many of the programs that could have led to additional discretionary allocation. Tex.Occ.Code § 2301.478(b).

In *Bray v. Tejas Toyota, Inc.*, the ALJ rejected the dealer's claim that its distributor violated the duty of good faith and fair dealing because there was insufficient evidence that the distributor engaged in "conscious doing of a wrong for a dishonest, discriminatory or malicious purpose[.]" 363 S.W.3d 777, 782 (Tex.App.—Austin 2012, no pet.). The agency construed Section 2301.478(b) to require a conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Id*. at 786 ("[T]he Division adopted the ALJ's determination that 'bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for a dishonest, discriminatory or malicious purpose . . . .'"). Here, the ALJ did not decide which standard applied, but determined

23

that even under New World Car's improper "not fair" standard, New World Car still failed to prove HMA breached its duty of good faith and fair dealing, either in its discretionary allocations or in the use of sales efficiency to measure dealer performance.

As discussed above in Issue Four, HMA properly used discretionary allocations to incentivize dealers to take actions that enhance the Hyundai brand, which included renovating facilities, becoming exclusive Hyundai dealers, adding the Equus line, and participating in HMA's service loaner program. New World Car's expert witness testified it "makes sense" that manufacturers award discretionary allocations. New World Car wrongly asserts HMA ignored its "multiple, repeated requests for additional inventory . . . ." However, HMA responded to the inventory requests, supplied New World Car with allocations, and offered New World Car opportunities to boost its allocations. Aside from requesting inventory, New World Car refused to take steps to increase its allocations.

Furthermore, HMA did not violate its duty of good faith and fair dealing by using the metric of sales efficiency. Sales efficiency is an industry metric that "virtually every manufacturer" uses to evaluate dealer performance. In *Tejas Toyota*, the ALJ rejected the dealer's complaint that the distributor's requirement of 100% sales efficiency violated Section 2301.478(b), and this agency agreed. *Tejas Toyota*, PFD at 1, 6. Here, HMA did not require New World Car to be 100% sales efficient. Nonetheless, the *Tejas Toyota* decision shows HMA's use of a standard-industry "metric" to measure a dealer's sales performance, is not a breach of the duty of good faith and fair dealing. Hetrick also testified he dealt fairly with New World Car, and it was in HMA's best interests to do so:

> Q.     I want you to tell Judge Harvel why you believe it's in Tom Hetrick and HMA's best interest to see that Mr. Zabihian fails as a dealership.

> A. There is no best interest for Hyundai to have a dealer fail. It doesn't matter if it's World Car or any other dealership. A failure is a failure.
>
> Q. If Mr. Zabihian and Mr. Deltang and his dealerships fail, do you, as the regional general manager, fail?
>
> A. Absolutely. I'm judged on dealerships that are struggling.
> .           .           .
> Q. Just because somebody asks you and wants special things, more inventory, more co-op, just because they ask, does that mean you can always or even usually accommodate a request?
>
> A. Sometimes the answer is no.

Moreover, the ALJ and the Board focused on HMA's actions and interactions with New World Car as to the allocation system and the sales efficiency metric because those were the sole bases of New World Car's Section 2301.478(b) claim. *See Hyundai*, 581 S.W.3d at 842 ("World Car alleged that Hyundai violated the statutory duty of good faith and fair dealing through its discretionary allocations and sales-standard 'requirement.'"). HMA argues that having directed the ALJ's and the Board's attention to these matters, New World Car cannot be heard to complain it should have looked elsewhere. We agree.

Both parties presented voluminous evidence on vehicle allocation and sales efficiency, and the ALJ weighed the evidence presented. As discussed above, an agency is "the sole judge of the weight of the evidence and the credibility of witnesses" and a court may not substitute its judgment for that of the agency's on the weight of the evidence on questions committed to agency discretion. *Buddy Gregg Motor Homes*, 179 S.W.3d at 601. The Board did not err in its application of Section 2301.468. The Board's decision to conclude HMA did not violate its duty of good faith and fair dealing in allocating vehicle inventory and in imposing sales requirements, was supported by substantial evidence, and was not an abuse of discretion. The Board did not prejudice New World Car's substantial rights as to its Section 2301.478(b) claim. Issue Five is overruled.

25

## CONCLUSION

For these reasons, the Board's final order is affirmed.

YVONNE T. RODRIGUEZ, Chief Justice

November 29, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.